## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | C.A. No. 12-804-LPS |
| FLATWORLD INTERACTIVES LLC,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC., *et al.*,<br><br>Defendants. | C.A. No. 12-964-LPS |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE DECLARATION OF ERIC J. GOULD BEAR IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 112(A)

OF COUNSEL:

Victor H. Polk, Jr.
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
Tel:  (617) 310-6000

Richard A. Edlin
Hyun Chung
Chang Joo Kim
Joshua L. Raskin
Kate Hutchins
John Handy
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendants Samsung Electronics
Co., Ltd., Samsung Electronics America, Inc.
and Samsung Telecommunications America,
LLC*

OF COUNSEL:

Steven Lieberman
Brian A. Tollefson
Joo Mee Kim
ROTHWELL, FIGG, ERNST
   & MANBECK, PC
607 14th Street., N.W., Ste. 800
Washington, D.C.  20005
Tel:  (202) 783-6040

John W. Shaw (#3362)
Karen E. Keller (#4489)
David M. Fry (#5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
Tel: (302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com

*Attorneys for Defendants LG Electronics, Inc.,*
*LG Electronics U.S.A., Inc. and*
*LG Electronics Mobilecomm U.S.A., Inc.*

Dated:  November 13, 2013
1130039/39350

# TABLE OF CONTENTS

I.      Nature and Stage of the Proceedings………………………………………….......1

II.     Summary of Argument and Statement of Facts.................................................................1

III.    Argument………………………………………………………………………….3

        A.      Legal Standards for the Admission of Expert Testimony…………………………3

        B.      A PHOSITA as Defined by Bear is Not Qualified to Give an Opinion on
                *Child Cognition*…………………………………………………………………4

        C.      Bear's Declaration is Conclusory, Unreliable, and Speculative and
                Therefore Does Not Meet the *Daubert* Standards………………………………..6

        D.      Bear's Opinions are Based Upon Errors of Law and are Thus Improper…………8

        E.      Bear's Testimony Improperly Supplies Missing Disclosure Rather Than
                Explains What Was Disclosed…………………………………………………...11

        F.      The Court Can Understand the Technology at Issue Without Expert
                Testimony………………………………………………………………………..13

IV.     Conclusion…………………………………………………………………………15

# TABLE OF AUTHORITIES

CASES

**Pages**

*Chore-time Equipment v. Cumberland Corp.*,
   713 F.2d 774 (Fed. Cir. 1983)..................................................................................14

*Daubert v. Merrell Dow Pharmaceutical, Inc.*,
   509 U.S. 579 ...........................................................................................Passim

*Dow Chem. Canada Inc. v. HRD Corp.*,
   656 F. Supp. 2d 427 (D. Del. 2009) ..........................................................................5

*General Elec. Co. v. Joinder*,
   522 U.S. 136 (1997) ...............................................................................................8

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966) .................................................................................................10

*ICU Med., Inc. v. RyMed Technologies, Inc.*,
   752 F. Supp. 2d 486 (D. Del. 2010) ..........................................................................3

*In re Lee*,
   277 F.3d 1338 (Fed.Cir.2002).................................................................................11

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   472 F. Supp. 2d 604 (D. Del. 2007) ..........................................................................4

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) ...............................................................................................3

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
   449 F.3d 1209 (Fed. Cir. 2006).................................................................................15

*Lockwood v. Am. Airlines, Inc.*,
   107 F.3d 1565 (Fed. Cir. 1997).................................................................................13

*OSI Pharm, Inc. v. Mylan Pharm. Inc.*,
   858 F. Supp. 2d 341 (D. Del. 2012) ..........................................................................5

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
   345 F. Supp. 2d 431 (D. Del. 2004) ..........................................................................5

*Penn. Dental Ass'n. v. Med. Serv. Ass'n.*,
   745 F.2d 248 (3d Cir. 1984) ...................................................................................4

*Perreira v. Sec'y of Dep't of Health & Human Servs.*,
   33 F.3d 1375 (Fed. Cir. 1994)..................................................................................11

*Pineda v. Ford Motor Co.*,
   520 F.3d 237 (3d Cir. 2008) ...........................................................................................3

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008).....................................................................................13

*Redman v. John D. Brush & Co.*,
   111 F.3d 1174 (4th Cir.1997) .........................................................................................5

*Salazar v. Procter & Gamble Co.*,
   414 F.3d 1342 (Fed. Cir. 2005)......................................................................................11

*Santarus Inc. v. Par Pharm, Inc.*,
   694 F.3d 1344 (Fed. Cir. 2012)......................................................................................14

*Shaw v. Strackhouse*,
   920 F.2d 1135 (3d Cir. 1990)..........................................................................................4

## STATUTES

35 U.S.C. § 112.......................................................................................................... 1, 12

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(a)(2)(B)(ii) .............................................................................................6

Federal Rule of Evidence 702......................................................................................... 3, 4, 14

D. Del. LR 7.1.3(c)(2) ...................................................................................................14

## I.      Nature and Stage of the Proceedings

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") and LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A. (collectively, "LG") (Samsung and LG are the "Defendants") respectfully file this brief in support of their Motion to Strike the Declaration of Eric J. Gould Bear in Opposition to Defendants' Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 112(A) ("Bear Declaration")[1].

## II.     Summary of Argument and Statement of Facts

Bear's Declaration violates a multitude of standards for permissible expert testimony and should be stricken.  First, Bear testifies concerning key conclusions for which a person having ordinary skill in the art ("PHOSITA") (as he has defined it) is not competent to testify.  Bear describes a PHOSITA under this patent as a computer programmer, but then bases key portions of his declaration on unsupported conclusions as to the cognitive needs of small children.  A PHOSITA, as Bear has defined it, simply is not competent to provide testimony on that subject.

Second, Bear's opinions should be stricken because they do not meet the *Daubert* standards in that they are completely conclusory, not supported by any reliable authority and not tested or testable, leaving no way for a judge or jury to assess their reliability.  On virtually each issue upon which he testifies, Bear provides no support other than his say so.  When he testifies about the needs of small children, he not only is not competent but he fails to cite to any reliable authority for his opinions.  When he testifies concerning the scope of the disclosure of removing an image, he again provides no support, but instead ignores dictionary definitions of the terms and indeed often ignores the fact that FlatWorld's own construction of the term "representative"

---

[1] Decl. of Eric J. Gould Bear in Opp. to Defs.' Mot. for Summary Judgment of Invalidity Under 35 U.S.C. § 112(a) (filed Nov. 9, 2013) [S.D.I. 87; L.D.I. 79] ("Bear Declaration").

– a "depiction" of at least a portion of an image – does not address leaving the image itself or a portion of the image itself, but only a *depiction* of an image.  Bear's opinions have no reliable or testable basis and do not meet the *Daubert* requirements.

Third, Bear's testimony is predicated upon key errors of law, which again renders the opinions not admissible.  Bear reviews the prosecution history of the patent-in-suit and concludes – contrary to the record – that the Examiner agreed that the term "removed" by itself disclosed not leaving a representative on the display.  This conclusion fails to account for the legal consequences of the amendment of FlatWorld's claims during prosecution and FlatWorld's failure to respond to the Examiner's statement of reasons for allowance.  As such, his opinions are necessarily founded on errors of law and are inadmissible.

Fourth, Bear's opinions violate Federal Circuit guidance in the written description context as to the proper scope of admissible opinion testimony.  The Federal Circuit allows expert testimony to explain what is disclosed, but not to create disclosure by concluding that undisclosed matter would have been "obvious."  This is precisely what Bear attempts – he does not, and cannot, point to any disclosure in the specification of not leaving a representative on a display and explain that disclosure.  He instead tries to create disclosure by testifying, beyond the competence of a PHOSITA, as to what would have been understood even though not disclosed.

Fifth, Bear offers a litany of arguments that the negative limitation is inherently disclosed in the specification (which it is not), but fails to explain as a threshold matter why the Court needs an expert to understand the word "remove."  It is well-established that, where the technology involved is easily understandable, expert testimony is not required.  This Court can understand the concept of "remove" without the need for expert testimony, particularly where

FlatWorld previously submitted dictionary definitions for the term "remove" as sufficient to explain the term.

The Court should strike the Bear Declaration for all of these reasons. The Bear Declaration does not create an issue of fact.

## III.     Argument

### A.     Legal Standards for the Admission of Expert Testimony

The admissibility of expert testimony is a question of law governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's *Daubert* decision. Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court has assigned "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."[2] Under the *Daubert* framework, district courts "act as gate-keepers overseeing the admission of scientific and non-scientific expert testimony."[3] A trial judge ensures that expert testimony is not only relevant but also reliable by determining whether: (1) an expert witness is qualified to testify about the subject matter; (2) the methodology the expert uses is reliable; and (3) the opinion fits the facts of the case.[4]

---

[2] *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 at 597; *see also Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir. 2008).
[3] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).
[4] *ICU Med., Inc. v. RyMed Technologies, Inc.*, 752 F. Supp. 2d 486, 495 (D. Del. 2010) *citing Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir. 2000).

In the context of summary judgment motions, the Third Circuit has demanded that the factual predicate of an expert's opinion must find some support in the record, and has emphasized that mere "theoretical speculations" lacking a basis in the record will not create a genuine issue of fact.[5]  Moreover, where an expert's opinion is predicated on factual assumptions, those assumptions must also find some support in the record.[6]  The determination of whether to exclude expert evidence is committed to the Court's sound discretion.[7]

### B.    A PHOSITA as Defined by Bear is Not Qualified to Give an Opinion on *Child Cognition*.

Rule 702 requires the district court to initially determine whether the purported expert witness is qualified to give the proffered testimony.  To be qualified as an expert, a witness must possess specialized knowledge, skill, experience, training, or education.  Thus, the Court must determine whether the proposed expert's qualifications are sufficiently related to the issues and evidence before the court such that the expert's testimony will assist the trier of fact.

Bear defines a PHOSITA as a person with "at least two years of high school-level programming education and experience, or alternatively one year of college-level programming"[8] and fails to include any qualifications or credentials related to **child cognition.** Yet, the key portions of his declaration are premised on unsupported conclusions regarding "[t]he Claimed Invention's Intended Users" – "small children."[9]  Bear opines that, "[w]ith this target audience in mind, a PHOSITA would know that functional success of the *Milekic* invention would require maintaining a visual display space void of cognitive complexity and

---

[5] *Penn. Dental Ass'n. v. Med. Serv. Ass'n.,* 745 F.2d 248, 262 (3d Cir. 1984).
[6] *Shaw v. Strackhouse,* 920 F.2d 1135, 1142 (3d Cir. 1990).
[7] *Inline Connection Corp. v. AOL Time Warner Inc.,* 472 F. Supp. 2d 604, 610 (D. Del. 2007).
[8] Bear Declaration ¶ 18.
[9] Bear Declaration ¶¶ 21-25.

thus void of representations of content not otherwise visible or manipulable."[10]  This opinion is directed to the cognitive reaction of small children to a representative on a display, unrelated to computer programming expertise, and beyond the scope of a computer programmer's training. Since any relevant testimony as to the sufficiency of the written description in a patent is to come from a PHOSITA, a PHOSITA here as defined by Bear is not competent to provide such testimony.

A party can only elicit expert testimony from someone who has specialized knowledge or training sufficient to qualify him or her to opine on an issue within their field of expertise, and the expert's opinion must be confined to that field.[11]  Courts in this district have repeatedly stricken expert testimony due to the lack of qualification of the purported expert to provide the subject testimony.[12]  An individual's qualifications as a computer programmer do not give him *carte blanche* to opine on wholly unrelated subjects including child cognition.  Accordingly, the Court should strike Bear's Declaration as unreliable under *Daubert* because a PHOSITA has no specialized expertise in child cognition[13] and is unqualified to opine on a child's reaction to a representative of a removed image on a display.

---

[10] *Id.* at ¶ 25.

[11] *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004).

[12] *See Dow Chem. Canada Inc. v. HRD Corp.,* 656 F. Supp. 2d 427, 435 (D. Del. 2009) (granting motion to strike to the extent the expert opines on patent office procedure since there "is nothing to indicate that Mr. Borsinger is qualified to offer opinion or testimony on such topics."); *see also OSI Pharm, Inc. v. Mylan Pharm. Inc.*, 858 F. Supp. 2d 341, 360 (D. Del. 2012) (doctor's testimony may not be relied upon because he is not a medicinal chemist) and *Redman v. John D. Brush & Co.,* 111 F.3d 1174, 1179 (4th Cir.1997) (metallurgist not qualified to testify about industry standards for safes).

[13] Even if relevant, which given the definition of PHOSITA it is not, Bear would not be competent to give an opinion regarding child psychology.  Bear's resume certainly establishes his background as a computer programmer.  Nothing in Bear's resume, however, indicates specialized training or experience to qualify him as an expert on **child cognition** and needs. Child cognition is a field of expertise in its own right.  Jean Piaget, named by *Time Magazine* as one of the most influential people of the 20th century, "spent much of his professional life

### C.   Bear's Declaration is Conclusory, Unreliable, and Speculative and Therefore Does Not Meet the *Daubert* Standards.

Bear's opinions also do not meet the reliability standards set forth in the Supreme Court's *Daubert* opinion and its progeny.  To be reliable, the proposed testimony must be supported by appropriate validation and must not be based on the purported expert's subjective belief or unsupported speculation.  Bear's conclusions are striking in their lack of any support.  He does nothing more than give conclusory statements of the precise nature the Court criticized in *Daubert*.  Much of Bear's Declaration consists of improper conclusory opinions in violation of the Federal Rules. Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring the specification of "the facts or data considered … in forming [all opinions]").  Bear's opinion that the '318 patent specification adequately describes a reason to exclude a representative of a removed image on the display hinges on these unqualified and unsupported statements regarding the claimed invention's intended users.

Bear cites two portions of the specification specifying that the purported invention was designed with "small children" as the target audience.  Neither of these excerpts mentions or relates to removal of an image or leaving a representative of a removed image on the screen.  First, Bear cites a portion of the specification describing the shortcomings of a ***mouse*** as "inherently abstract" and "involv[ing] fine visual-motor coordination" which is wholly unrelated to removing an image from a screen.[14]  Second, Bear quotes an excerpt from the background of

---

listening to children, watching children, and poring over reports of researchers around the world who were doing the same.  He found, to put it most succinctly, that children don't think like grownups." Seymour Papert, "Child Psychologist Jean Piaget," *Time Magazine*, March 29, 1999. (attached as Exh. A)  Also, the American Board of Professional Psychology recognizes "Child & Adolescent Psychology" and "Cognitive & Behavioral Psychology" as distinct specialties. American Board of Professional Psychology Eligibility for Specialty Certification, located at: http://www.abpp.org/i4a/pages/index.cfm?pageid=3382, last visited Nov. 11, 2013.
[14] Bear Declaration ¶ 23 (citing *Milekic* 3:66-4:6).

the invention describing the goals of the '318 patent, none of which relate to removal of an image.[15] Based on these excerpts alone, and with no specialized expertise in child cognition, Bear introduces concepts such as "cognitive abstractions"[16] and "cognitive complexity"[17] and states that a PHOSITA who reads the specification and understands the stated objectives relating to child interfaces would appreciate that a "representative" should not be left on the display.

In failing to explain the rationale for his own conclusions, Bear does not address why contrary conclusions are impermissible or wrong. For example, Bear does not explain why leaving a representative of a removed image is inapposite to the goals of the '318 patent because such an invention is not "child safe," does not "permit direct manipulation of objects in the display," requires "literacy," requires "typing skills" or requires "fine motor coordination."[18] Quite the contrary to being incompatible with these goals, an electronic book that leaves representatives of the removed pages on the screen would be "analogous to interactions in the real world" with "intuitive, easy, and predictable results."[19] Nonetheless, Bear completely fails to explain why the goals of the '318 patent specifically targeted to small children are inconsistent with turning pages in the prior art Henckel reference, especially where leaving graphical representations of the pages may support literacy by teaching children how a book works.

Nonetheless, Bear concludes that "[a] PHOSITA would know that leaving such depictions on screen would frustrate the Milekic design because those representations would clutter the display, increase cognitive load, and risk confusing Milekic's user."[20] This "expert" opinion forms the sole basis for FlatWorld's argument that the negative limitations are

---

[15] *Id.* at ¶ 24 (citing *Milekic* 1:60-67).
[16] *Id.* at ¶ 23.
[17] *Id.* at 25.
[18] *Id.* at ¶ 24.
[19] *Id.* at ¶23.
[20] *Id.* at ¶ 40.

adequately supported since the specification is silent on a reason to exclude and reveals FlatWorld's true motive for submitting the Bear Declaration:  to attempt to create an issue of material fact by speculating on the adverse cognitive reaction of small children to a representative of removed imaged.  This unfounded statement cannot supplant the fact that Bear has offered no evidence whatsoever as to a PHOSITA's perception of the word "remove."  An expert opinion cannot substitute for the lack of evidence, and Bear's Declaration should be stricken because each of his conclusions and opinions fails to satisfy the requirements for expert testimony.[21]

### D.    Bear's Opinions are Based Upon Errors of Law and are Thus Improper

Bear's opinions are also based upon errors of law precluding their admissibility.  Bear's conclusions, purportedly drawn from his review of the prosecution history of the patent-in-suit, fail to correctly account for and apply the legal significance of what occurred there.  He opines, for example, that the Examiner agreed that the term "removed" by itself disclosed not leaving a representative on the display, failing to appreciate the legal consequences of the amendment of FlatWorld's claims during prosecution and FlatWorld's failure to respond to the Examiner's statement of reasons for allowance.  Having misapprehended the legal significance of these matters, Bear then goes on to testify concerning issues which are in fact controlled as a matter of law by the prosecution history.  As such, his opinions are necessarily founded on errors of law and are inadmissible.

Bear opines that "Henckel does not 'remove' images," "a PHOSITA would understand that Henckel never removes images from a computer screen," and the Examiner agreed that

---

[21] *General Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.")

disclosure of removing an image was also disclosure of not leaving a representative of the image.[22]  Based upon this erroneous interpretation of the undisputed record, Bear comes to erroneous conclusions concerning what was disclosed in the specification.

Contrary to Bear's opinion, the Examiner repeatedly stated that Henckel – which undisputedly left a representative of the image on the screen – *removes* images as follows:

- Non-Final Office Action (10/3/02)

"Henckel discloses 'turn the page' of the displayed book which is *removal* of the image" (emphasis added).[23]

- Final Office Action (3/12/03)

The Examiner noted: "[t]he Examiner has relied on Henckel's reference for teaching a 'swipe' operation which *remove* [*sic*] *a swiped image* displayed in a page from the display screen . . ."[24]  The Examiner further stated, "it [*sic*] clear that there are two pages of the book displayed on screen [in Henckel], when one of the pages is turned over, that page's image is *removed* and automatically replaced with another image."[25]

- Non-Final Office Action (8/29/03)

The Examiner noted:  "Applicant's argument (page 5, line 9) 'the image is *removed from the set immediately distinguishes Applicant's invention.*'  However, Henckel's system explicitly discloses a page (an image) is *removed* from a set (a book) of images in response to location inputs and speed as Applicant's invention claimed, therefore, this argument is not persuasive."[26]

---

[22] Bear Declaration ¶¶ 41-43.
[23] File History, Application No. 09/096,950, Non-Final Office Action, Oct. 3, 2002 at pg. 3.
[24] File History Application No. 09/096,950, Final Office Action, March 12, 2003 at pg. 8. (emphasis in original)
[25] *Id.* at 10. (emphasis added).
[26] File History, Application No. 09/096,950, Non-Final Office Action, Aug. 29, 2003 at pg. 7. (emphasis of "removed" added).

- <u>Final Office Action (1/28/04)</u>

  The Examiner stated:

  Regarding claim 20, in addition to what is recited in claim 19, Henckel discloses that "*This page turning technique is very similar to the turning of a page with an actual book or magazine*" which is **removal** of the image of a displayed book page, and subsequently/ automatically replacing with another (next page) image (abstract, Figs. 1-2).[27]

- <u>Notice of Allowance with Examiner's Amendment (3/8/05)</u>

  Finally, in outlining the reasons for allowance, the Examiner noted the following:

  The Examiner's Amendment 2/4/05 puts the application into condition for allowance . . . . The Examiner's Amendment renders moot any issues about Henckel et al, because Henckel still leaves a representative of the image (such as a line) representing the page even after the page is '**removed**' and the present invention is now amended to show that no representative remains . . . . The claims as now brought out in the Examiner's Amendment are not set forth in the prior art of record.[28]

Bear at best ignores and at worst misrepresents these office actions in stating that "[t]he patent office Examiner recognized that the Milekic invention never leaves any portion or any depiction of the removed image on the screen and allowed the patent over Henckel for exactly that reason, as repeatedly explained by the inventor."[29]

Bear's conclusion is in error as a matter of fact as well.  As stated by the Supreme Court, "the patentee obtained his patent only by accepting the limitations imposed by the Examiner. The claims were carefully drafted to reflect these limitations and [the patentee] is not now free to assert a broader view of [the] invention."[30]  Courts have held that examiner statements may

---

[27] File History, Application No. 09/096,950, Final Office Action, Jan. 28, 2004, at pg. 3. (emphasis of "removal" added).
[28] File History, Application No. 09/096,950, Notice of Allowance, March 8, 2005 at pgs. 6-7. (emphasis of "removed" added).
[29] Bear Declaration ¶ 43.
[30] *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 34 (1966).

evidence what a PHOSITA would have understood at filing time.[31]  Bear's conclusion that the

"Examiner's amendment did not narrow or add new and distinct limitations, or draw the claims

to a new invention"[32] is unfounded and unsupported by the prosecution history itself.  An expert

opinion is no better than the soundness of the reasons supporting it.[33]  Therefore, the Court

should strike Bear's Declaration as further unreliable under *Daubert*.

>  **E.  Bear's Testimony Improperly Supplies Missing Disclosure Rather Than Explains What Was Disclosed**

Bear attempts in his opinion to plug holes in the specification disclosure rather than

explain what is in fact there.  This is not proper under Federal Circuit precedent.

Bear's opinion is based on his conclusion that "a PHOSITA would know that functional

success of the Milekic invention would require maintaining a visual display space void of

cognitive complexity and thus void of representations of content not otherwise visible or

manipulable."[34]  Bear does not cite ***any*** supporting references in the specification that say

anything remotely of the sort.  The only portions of the specification cited by Bear say that (a)

using a mouse is inherently abstract and involves fine visual-motor coordination; (b) a user

interface is desired that permits direct manipulation of objects and requires neither literacy nor

typing skills nor fine motor coordination; (c) when an image of a face part is thrown away from

the display, a new part is introduced as a replacement; and (d) code is provided that wholly

---

[31] *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("Statements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed."); *In re Lee*, 277 F.3d 1338, 1345 (Fed.Cir.2002) ("In finding the relevant facts, in assessing the significance of the prior art, and in making the ultimate determination of the issue of obviousness, the examiner and the Board are presumed to act from th[e] viewpoint of [a person having ordinary skill in the art].")

[32] Bear Declaration ¶ 45.

[33] *Perreira v. Sec'y of Dep't of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994).

[34] Bear Declaration ¶ 25.

eliminates images from the display.[35]  None of these cited portions say or even suggest that the functional success of the Milekic invention requires maintaining a visual display space void of cognitive complexity and thus void of representations of content not otherwise visible or manipulable.  That the user interface permits direct manipulation of objects and requires neither literacy nor typing skills nor fine motor coordination has ***nothing whatsoever*** to do with removing images without leaving representatives of those images.

In addition, the portions of the specification saying that images are removed say ***nothing*** about not leaving representatives.  Under either party's construction of "representative," the representative is not the image itself or even part of the image itself.  At best, under FlatWorld's construction, it is a "depiction" of at least a portion of the image – not a portion of the image.  Therefore, the specification's disclosure of removing images does not support removing without leaving representatives, even under FlatWorld's construction.

This point is highlighted by FlatWorld's statements in its brief on page 8:

> Since 'remove' means the same thing with or without the 'representative' clauses, all that is required is that the specification disclose the 'remove' limitation . . . The specification makes clear not only that the claimed invention involves removal of an image, it also makes clear that the removal leaves no ***portion of the image*** on the display or screen.[36]

In order to support its argument that disclosure in the specification of "removal" also supports removal without leaving a representative, FlatWorld had to change its construction of representative to "portion of the image" itself, rather than a "depiction" of at least a portion of the image.

---

[35] (a) *Id.* at ¶ 23; (b) *Id.* at ¶ 24; (c) *Id.* at ¶ 28; (d) *Id.* at ¶¶ 30-37.
[36] Pl. Flatworld's Opp. to Defs.' Mot. for Summary Judgment of Invalidity Under 35 U.S.C. § 112(a) (filed Nov. 7, 2013) [S.D.I. 86; L.D.I. 78].

Thus, Bear does not cite any portion of the specification that says that the functional success of the Milekic invention requires maintaining a visual display space void of cognitive complexity and thus void of representations of content not otherwise visible or manipulable.

The Federal Circuit has made clear that this type of expert opinion is improper. While a PHOSITA may provide context and understanding of what is actually disclosed,[37] it is not proper to use an expert to testify that the undisclosed matter would have been obvious. It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose.[38]

These facts are very similar to those in the Federal Circuit's *PowerOasis* decision. The Federal Circuit addressed there an attempt to have a PHOSITA testify as to what would have been "obvious" from the intrinsic record (since, as the court concluded, the intrinsic evidence cited by the expert did not directly support his opinion). In rejecting the sufficiency of the PHOSITA opinion that certain functionality referenced in the patent was "well known to those of ordinary skill," the Court noted that such an opinion was not the same as an assertion that such functionality was ***actually disclosed*** in the record.[39] Bear points to nothing anywhere addressing how not leaving a representative of an image was anywhere referenced or indicated in the specification. His attempt to fill in the blanks should be rejected.

## F.   The Court Can Understand the Technology at Issue Without Expert Testimony

Bear is no better position than this Court to determine whether the negative limitations are supported by the specification. Bear's Declaration concedes that the specification does not

---

[37] *See, e.g. PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008).
[38] *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed. Cir. 1997).
[39] *PowerOasis*, 522 F.3d at 1310.

explicitly provide a reason to exclude.  For a negative limitation, the Federal Circuit has held that silence in the specification is not enough and that the specification is sufficient if it "describes a reason to exclude the relevant limitation."[40]  Because a negative limitation cannot be implied, expert testimony is not necessary to conclude that the negative limitations at issue do not satisfy the written description requirement.

Additionally, the meaning of "remove" is not the subject of any "specialized knowledge" as evidenced by FlatWorld's submission of dictionary definitions.[41]  Fed. R. Evid. 702.  While experts may be helpful in understanding technical terms and issues, the Court has complete discretion in determining whether it needs expert testimony to understand a patent where the technology is easily understandable.[42]  And as a threshold matter, Bear's Declaration relies upon the same erroneous claim construction arguments for "remove" that FlatWorld already made in its Opening and Responsive Claim Construction Briefs.[43]  As such, Bear's opinions on the proper construction of "remove" to subsume the "without leaving a representative" negative limitations should be stricken as untimely under this Court's local rules.  *See* D. Del. LR 7.1.3(c)(2) (prohibiting the introduction of material in reply briefs that should have been included in an

---

[40] *Santarus Inc. v. Par Pharm, Inc.,* 694 F.3d 1344, 1351 (Fed. Cir. 2012).

[41] *See* Exhibits to Joint Claim Construction and Prehearing Statement filed in *FlatWorld Interactives, LLC v. Apple, Inc.*, No. 12-CV-1956 (N.D. Cal.) [Dkt. 63-1] Ex. A at pg. 38 ("To do away with; eliminate: remove a stain."); ("to get rid of: eliminate"); ("eliminate or get rid of") which do not incorporate any concept that remove means without leaving a representative of the removed image.  (attached as Exh. B).

[42] *See e.g. Chore-time Equipment v. Cumberland Corp.*, 713 F.2d 774 (Fed. Cir. 1983) (affirming summary judgment where the subject matter of the patent is easily understandable and a need for expert testimony had not been shown).

[43] *See* FlatWorld's Opening Markman Brief [D.I. 57] at 19-22; FlatWorld's Responsive Markman Brief [D.I. 73] at 1-5).

opening brief).[44] For these reasons, the Court should strike Bear's Declaration as unnecessary and unhelpful.

## IV. Conclusion

Bear's opinions are outside the scope of expertise of a computer programmer having one or two years of education and not within the expertise required to give an expert opinion regarding child cognition. His declaration is replete with conclusory and speculative statements, is based upon errors of law, and impermissibly rewrites rather than interprets the specification. Furthermore, the technology at issue is readily understandable to the Court without the need for expert testimony. For these reasons, the Court should strike Bear's Declaration in its entirety, and grant Defendants' motion for summary judgment.

<table>
<tr><td>OF COUNSEL:</td><td>POTTER ANDERSON & CORROON LLP</td></tr>
<tr><td>
Victor H. Polk, Jr.<br>
GREENBERG TRAURIG, LLP<br>
One International Place, 20th Floor<br>
Boston, MA 02110<br>
Tel: (617) 310-6000<br><br>
Richard A. Edlin<br>
Hyun Chung<br>
Chang Joo Kim<br>
Joshua L. Raskin<br>
Kate Hutchins<br>
John Handy<br>
GREENBERG TRAURIG, LLP<br>
200 Park Avenue<br>
New York, NY 10166<br>
Tel: (212) 801-9200
</td><td>
By: <u>/s/ David E. Moore</u><br>
    Richard L. Horwitz (#2246)<br>
    David E. Moore (#3983)<br>
    Bindu A. Palapura (#5370)<br>
    Hercules Plaza 6th Floor<br>
    1313 N. Market Street<br>
    Wilmington, DE 19801<br>
    Tel: (302) 984-6000<br>
    rhorwitz@potteranderson.com<br>
    dmoore@potteranderson.com<br>
    bpalapura@potteranderson.com<br><br>
<i>Attorneys for Samsung Electronics Co., Ltd.,<br>
Samsung Electronics America, Inc. and<br>
Samsung Telecommunications America, LLC</i>
</td></tr>
</table>

---

[44] Should this Court reject FlatWorld's construction for "remove," the entirety of Bear's declaration would necessarily be irrelevant to Defendants' Motion for Summary Judgment. *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming district court exclusion of expert opinion as "irrelevant because it was based on an impermissible claim construction").

SHAW KELLER LLP

OF COUNSEL:

Steven Lieberman
Brian A. Tollefson
Joo Mee Kim
ROTHWELL, FIGG, ERNST
  & MANBECK, PC
607 14th Street., N.W., Ste. 800
Washington, D.C.  20005
Tel:  (202) 783-6040

By:   _/s/ David M. Fry_____
       John W. Shaw (#3362)
       Karen E. Keller (#4489)
       David M. Fry (#5486)
       300 Delaware Avenue, Suite 1120
       Wilmington, Delaware 19801
       Tel: (302) 298-0700
       jshaw@shawkeller.com
       kkeller@shawkeller.com
       dfry@shawkeller.com

Dated:  November 13, 2013
1130039/39350

*Attorneys for Defendants LG Electronics, Inc.,*
*LG Electronics U.S.A., Inc. and*
*LG Electronics Mobilecomm U.S.A., Inc.*

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 13, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on November 13, 2013, the attached document was Electronically Mailed to the following person(s):

Joseph J. Farnan, Jr.
Brian E. Farnan
Farnan LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
farnan@farnanlaw.com
bfarnan@farnanlaw.com

Steve W. Berman
Mark S. Carlson
Tyler S. Weaver
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
steve@hbsslaw.com
markc@hbsslaw.com
tyler@hbsslaw.com

By:   _/s/ David E. Moore_
Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

1080371/39350