## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FLATWORLD INTERACTIVES LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-804-LPS |
| | : | |
| SAMSUNG ELECTRONICS CO., LTD., | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| FLATWORLD INTERACTIVES LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-964-LPS |
| | : | |
| LG ELECTRONICS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

Brian E. Farnan, Michael J. Farnan, FARNAN, LLP, Wilmington, DE.

Steve W. Berman, Mark S. Carlson, HAGENS BERMAN SOBOL SHAPIRO, LLP, Seattle, WA.

    Attorneys for Plaintiff FlatWorld Interactives LLC

Richard L. Horwitz, David E. Moore, Erich W. Struble, Bindu A. Palapura, POTTER ANDERSON & CORROON, LLP, Wilmington, DE.

Victor H. Polk, GREENBERG TRAURIG, LLP, Boston, MA.

Richard A. Edlin, Hyun Chung, Chang Joo Kim, Joshua L. Raskin, Kate Hutchins, John Handy, GREENBERG TRAURIG, LLP, New York, NY.

    Attorneys for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC

John W. Shaw, Karen E. Keller, David M. Fry, SHAW KELLER, LLP, Wilmington, DE.

Steven Lieberman, Brian A. Tollefson, Joo Mee Kim, ROTHWELL, FIGG, ERNST & MANBECK, P.C., Washington, D.C.

Y.S. Lee, Sonja Bae, LG ELECTRONICS, Seoul, Korea.

Attorneys for Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Mobilcomm U.S.A., Inc.

---

## MEMORANDUM OPINION

December 31, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are Defendants' (1) Motion for Summary Judgment of

Invalidity under 35 U.S.C. § 112(a) (C.A. No. 12-804 D.I. 78; C.A. No. 12-964 D.I. 70);

(2) Motion for Partial Summary Judgment Limiting Damages in the Case to Post-Complaint

Activities (C.A. No. 12-804 D.I. 69; C.A. No. 12-964 D.I. 59); and (3) Motion to Strike

Declaration of Eric J. Gould Bear in Opposition to Defendants' Motion for Summary Judgment

of Invalidity (C.A. No. 12-804 D.I. 91; C.A. No. 12-964 D.I. 84)

For the reasons below, the Court will deny Defendants' motion for summary judgment on

invalidity and grant Defendants' motion for partial summary judgment limiting damages. The

Court will also grant the motion to strike the Declaration of Mr. Bear.

## I.     BACKGROUND

Plaintiff FlatWorld Interactives LLC ("Plaintiff") filed these patent infringement actions

on June 22, 2012 against defendants Samsung Electronics America Inc., Samsung Electronics

Co. Ltd., and Samsung Telecommunications America LLC (C.A. No. 12-804 D.I. 1), and on July

20, 2012 against defendants LG Electronics Inc., LG Electronics Mobilecomm U.S.A. Inc., and

LG Electronics U.S.A. Inc. (collectively, "Defendants") (C.A. No. 12-964 D.I. 1), alleging

infringement of U.S. Patent No. RE43,318 ("the '318 patent"). The '318 patent is entitled, "User

interface for removing an object from a display" and relates to a system for manipulating images

on a display using a touch-sensitive screen. In particular, the patent-in-suit discloses a system

that removes an image from a screen display by the gesture of "throwing" it from the screen. The

'318 patent is a reissue of U.S. Patent No. 6,920,619 ("the '619 patent").

On October 21, 2013, Defendants filed their motion for summary judgment of invalidity

1

under § 112(a), after having previously been granted leave to do so. (C.A. No. 12-804 D.I. 78; C.A. No. 12-964 D.I. 70) The parties completed briefing the motion for summary judgment on November 14, 2013. (D.I. 79, 86, 94)[1]

On October 15, 2013, Defendants also jointly filed a motion for partial summary judgment limiting damages in the case to post-complaint activities (C.A. No. 12-804 D.I. 69; C.A. No. 12-964 D.I. 59), which the Court had authorized Defendants to do during a teleconference on October 4, 2013 (D.I. 77 ("Disc. Tr.") at 15-16). The parties completed briefing the motion for summary judgment limiting damages on November 12, 2013. (D.I. 70, 82, 89)

On November 15, 2013, the Court held a *Markman* hearing, at which the Court also heard argument by the parties on the pending motions. (D.I. 101) ("Tr.")[2]

## II.    LEGAL STANDARDS

### A.    Motion to Strike

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and

---

[1]The Court refers to the "D.I." number in C.A. No. 12-804 for the remainder of the opinion, unless otherwise indicated.

[2]By separate opinion and order issued simultaneously with the instant opinion, the Court has construed the disputed terms of the patent-in-suit.

2

methods," and "the expert has reliably applied the principles and methods to the facts of the case." There are three distinct requirements for proper expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

## B.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party carries its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

3

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## C. Written Description

Pursuant to 35 U.S.C. § 112, ¶ 1, the specification of a patent "shall contain a written description of the invention." The written description "analysis compares the claims with the invention disclosed in the specification, and if the claimed invention does not appear in the specification," the claim "fails regardless whether one of skill in the art could make or use the claimed invention." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1348 (Fed. Cir. 2010).

4

"[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* at 1351 ("[D]escription must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.") (internal quotation marks omitted); *see also Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013) ("[S]pecification must describe an invention understandable to [a] skilled artisan and show that the inventor actually invented the invention claimed.").

"A determination that a patent is invalid for failure to meet the written description requirement of 35 U.S.C. § 112, ¶ 1 is a question of fact." *Ariad*, 598 F.3d at 1355 (internal quotation marks omitted). Because a patent "enjoys a presumption of validity," a moving party "seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001); *see also* 35 U.S.C. § 282; *Ariad*, 598 F.3d at 1354 ("A patent is presumed to be valid, and this presumption only can be overcome by clear and convincing evidence.").

## D.     Limitation of Damages

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement [of its patent], but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284. There are statutory limitations on the damages available to a patentee. For instance, "[e]xcept as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint . . . for infringement." 35 U.S.C. § 286. Additionally, if a patentee

5

"mak[es], offer[s] for sale, or sell[s] within the United States any patented article" and fails to mark it, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice." 35 U.S.C. § 287(a).

Section 287(a) "permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). When constructive notice via marking is absent, § 287(a) "requires actual notice to the accused 'to assure that the recipient knew of the adverse patent during the period in which liability accrues.'" *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008) (quoting *SRI Int'l, Inc. v. Adv. Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997)). Actual notice must be of "the infringement," not "merely notice of the patent's existence or ownership." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.").

Compliance with § 287(a) is a question of fact. *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). "The duty of alleging, and the burden of proving, either actual notice or constructive notice is upon the patentee." *Id.* (citation omitted).

## III.   DISCUSSION

### A.   Motion to Strike

In connection with its briefing opposing Defendants' motion for summary judgment of invalidity based on lack of written description, Plaintiff's filed the Declaration of Eric J. Gould

6

Bear, an individual Plaintiff contends is a person of ordinary skill in the art at the time of the invention. (*See* D.I. 87, 102) Defendants move to strike the Bear Declaration, arguing it is improper, erroneous, and unnecessary expert testimony, for multiple reasons. (D.I. 91, 92, 103)

Because the Court has concluded that it must deny Defendants' motion for summary judgment even without consideration of the Bear Declaration, the Court will grant Defendants' motion to strike. The Court's decision to strike the declaration is without prejudice to Plaintiff's ability to attempt to rely on Bear at a later point in this case.

## B.    Motion for Summary Judgment of Invalidity

Defendants contend that they are entitled to summary judgment that the '318 patent is invalid because it contains a negative claim limitation – that the image displayed on a screen be "removed" from the screen, when the user drags the image above a threshold velocity, "*without leaving a representative thereof*" – that is not adequately supported in the written description, as required by § 112(a). (D.I. 79 at 2-3) The negative claim limitation appears in claims 1, 7, and 15 of the '318 patent.[3]

In particular, Defendants argue that because the '318 patent's specification never describes a reason to exclude the relevant limitation, the inventor did not describe or possess the negative limitation (removing images without leaving a representation thereof) by the application filing date, making the limitation invalid. (*See* D.I. 79 at 8-9) Defendants further explain that the originally-filed claims of the '619 patent did not include the negative limitations, and that they

---

[3]*See* '318 patent at 15:12-13 ("*without* leaving any representative thereof in the display"); 15:47-48 ("*without* leaving any representative thereof on the screen"); *id.* at 16:22-23 ("replacing the image with a replacement image that is *not* a representative of the removed image") (emphasis added).

7

were added during prosecution only to overcome the prior art (i.e., the Henckel reference). (*Id.* at 4-6; *see also* D.I. 86 at 2 (Plaintiff explaining "[i]t is undisputed that the . . . portions of these claims [at issue in the motion] were added at the request of the examiner during prosecution of the '619 Patent"))

Plaintiff responds, first, that the claims do not contain a negative limitation. (D.I. 86 at 4-9) Next Plaintiff insists that, even if the claims do contain a negative limitation, the disclosures in the written description allow a person of ordinary skill to understand that the inventor was in possession of the negative limitation as of the filing date. (*Id.* at 10-11) Plaintiff contends further that, at a minimum, there are genuine disputes of material fact as to whether the '318 patent specification reasonably conveys to a skilled artisan that the inventor was in possession of the claimed invention, making summary judgment inappropriate. (*Id.* at 12-13) Taking the evidence in the light most favorable to Plaintiff, the Court concludes that there is a genuine dispute of material fact, and will deny Defendants' motion for summary judgment.

As an initial matter, the Court agrees with Defendants that the claim language on which they base their motion is, indeed, a negative claim limitation. By separate opinion and order, the Court has today construed the disputed claim terms in the '318 patent. In resolving the parties' dispute over the construction of the term "representative thereof," as it appears in claims 1, 7, and 15, the Court has concluded that the term is not indefinite and has adopted Defendants' alternative proposed construction of "a portrayal or symbol of the removed image." *See* Markman Op. at 18-23. In reaching this conclusion, the Court has determined that the claims contain a negative claim limitation.

The core § 112(a) inquiry is "whether the disclosure of the application relied upon

8

reasonably conveys to those skilled in the art that the inventor had possession of the claimed

subject matter as of the filing date." *Ariad*, 598 F.3d at 1351; *see also Novozymes A/S*, 723 F.3d

at 1344 ("[T]he applicant must 'convey with reasonable clarity to those skilled in the art that, as

of the filing date sought, he or she was in possession of the invention,' and demonstrate that by

disclosure in the specification of the patent.") (quoting *Carnegie Mellon Univ. v. Hoffman-La

Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008)). Under § 112(a), negative claim limitations

are "adequately supported when the specification describes a reason to exclude the relevant

limitation." *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1351 (Fed. Cir. 2012). "Such

written description support need not rise to the level of disclaimer. In fact, it is possible for the

patentee to support both the inclusion and exclusion of the same material." *Id.*

Here, the specification teaches a person of ordinary skill that once the image is removed

from the screen, nothing related to it is left behind. The reason for excluding any representative

of the removed image may be discerned from the specification. The specification explains that to

enable "small children . . . to be able to take care of the educational and entertainment

opportunities offered by the computer" ('318 patent at 1:60-62), the claimed digital device allows

children to manipulate images in a way that "makes sense to the child and provides feedback . . .

in comparison to equivalent real-world manipulation" (*id.* at 4:33-36). Thus, when an image on

the screen is "thrown," the response is like a real-world throw in that the throw "gets rid of the

part being thrown." (*Id.* at 12:24) At least certain of the specific embodiments disclosed, such as

the "hide-and-go-seek" function or "guessing game" function (*id.* at 8:30-44), necessitate that not

only the image itself *but also any representative thereof* be completely removed from the screen.

Defendants' contention that Plaintiff's reply brief on indefiniteness, and its discussion of

9

the inventor's (Dr. Milekic) statement that he had not considered it part of his research to leave a representative of a thrown image on the screen, constitutes an admission that the negative limitation was not part of his conception of his invention, is unavailing. (D.I. 127 at 1) (citing D.I. 125 at 2) At most, Dr. Milekic's deposition testimony, and Plaintiff's related statements, show that the inventor never contemplated affirmatively "*leaving* a representative image" behind. They do not show the opposite: that he failed to possess the concept of *not* leaving a representative behind.

The Court finds that there remain genuine issues of material fact and will deny summary judgment of invalidity based on lack of written description.

### C.    Motion for Summary Judgment to Limit Damages

#### 1.    Marking during reissue proceedings

It is undisputed that Plaintiff has produced in discovery a single embodiment of the '318 patent: an installation at the Philadelphia Zoo Snow Leopard Interactive Exhibit in July 2009. (D.I. 82 at 2, 3) (citing D.I. 83 (Declaration of Slavaljub Milekic) ("Milekic Decl.") at ¶ 5) As of this date, the original '619 patent had been issued, but was undergoing reissue proceedings, from which would ultimately emerge the '318 patent-in-suit. It is further undisputed that Plaintiff failed to mark the Philadelphia Zoo embodiment. Plaintiff contends, however, that it was not required to mark the Philadelphia Zoo embodiment because of the then-ongoing reissue proceedings. Plaintiff argues that at this time it could not have marked the product because it could not have known whether any claims would be allowed. (D.I. 82 at 4) While Plaintiff concedes that during a reissue proceeding an original patent number can be placed on an embodiment of the invention, to Plaintiff doing so might lead to claims for false marking, if it

10

were to turn out that no claims emerged from the reissue. In Plaintiff's view, to require marking

in these circumstances "creates a conflict between the notice policy served by 35 U.S.C. § 287's

limitation on damages when products have not been marked and the false marking statute, 35

U.S.C. § 292." (*Id.* at 5)

The parties have not directed the Court to any authority addressing this situation. Having

considered the parties' arguments and the authorities cited, the Court disagrees with Plaintiff's

position, as it appears to be based on a misapprehension of the nature of a patent undergoing

reissue and, further, ignores the plain language of 35 U.S.C. § 252.

Section 252 provides that "[t]he surrender of the original patent shall take effect ***upon the***

***issue of the reissued patent***." (Emphasis added) That is, a patent undergoing reissue remains in

force during the reissue proceedings, and an accused infringer may be liable for infringing

activity occurring during the reissue prosecution. As § 252 further sets out:

> [E]very reissued patent shall have the same effect and operation in
> law, on the trial of actions for causes thereafter arising, as if the
> same had been originally granted in such amended form, but in so
> far as the claims of the original and reissued patents are
> substantially identical, such surrender shall not affect any action
> then pending nor abate any cause of action then existing, and the
> reissued patent, to the extent that its claims are substantially
> identical with the original patent, shall constitute a continuation
> thereof and have effect continuously from the date of the original
> patent.

Plaintiff conflates the clear status of the original patent prior to reissue with the separate idea that

***after the reissue*** is completed, a reissued patent is not necessarily treated as a continuation of the

original if its claims are not "substantially identical." However, it is undisputed that by statute,

the original '619 patent remained in force during the time the Philadelphia Zoo installation was

11

sold and installed. As a result, § 287 applied and required marking.

Furthermore, requiring marking during reissue proceedings – that is, before reissuance – comports with the underlying purposes of § 287. As the Federal Circuit has explained, "The marking statute serves three related purposes: 1) helping to avoid innocent infringement, 2) encouraging patentees to give notice to the public that the article is patented, and 3) aiding the public to identify whether an article is patented." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998). Accepting Plaintiff's position would have the effect of encouraging patentees not to mark when a valid patent remains in force, increasing the likelihood of innocent infringement. Doing so would also undermine the notice function of the patent, as an accused infringer would be deprived of an important source of notice – marking – yet would still be liable for infringement in the absence of notice, should the reissue result in claims that are substantially identical to the earlier patent. *See* 35 U.S.C. § 252.

Notably, Plaintiff cites no authority for the proposition that marking embodiments with the original patent number ***during*** reissue prosecution, before reissuance occurs, and while an original patent remains in force, is a basis for a false marking claim under § 292. Given the reasoning above, this lack of precedent is unsurprising.

The Court concludes that the reissue proceedings did not absolve the marking requirements of § 287, as during those proceedings the '619 patent remained in force. Hence, Plaintiff was required to provide actual or constructive notice of the patent in connection with the Philadelphia Zoo installation.

## 2.    Constructive Notice

Plaintiff has stipulated that it did not mark any of its touch screen installations that

12

practice the inventions claimed in the '318 patent. (D.I. 71 (Declaration of Jennifer Maisel ("Maisel Decl.") Ex. B at 2)) Plaintiff contends, however, that § 287 does not bar damages for a failure to mark a relatively small number of products because its one embodiment, the Philadelphia Zoo installation, comes within a *de minimis* exception. (D.I. 82 at 7-8)

Plaintiff relies on several district court decisions for this proposition. *See, e.g., Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 794 F. Supp. 1370 (E.D. Wis. 1992), *aff'd in part, rev'd in part*, 6 F.3d 1523 (Fed. Cir. 1993); *Maxwell v. K Mart Corp.*, 880 F. Supp. 1323 (D. Minn. 1995); *Hazeltine Corp. v. Radio Corp. of Am.*, 20 F. Supp. 668 (S.D.N.Y. 1937). However, these cases are inapposite. In each, the *de minimis* exception applied to attempted compliance with the marking statute that suffered from some minor failure to mark. That is, the cited decisions involve situations in which a large number of products or embodiments were released and, through accident or a licensee's oversight, some of the products were unmarked. *See Hazeltine*, 20 F. Supp. at 671-72 ("[T]here must be marking of every patented article sold – subject, of course, to the implied exception of de minimis, as, for example, failure by mistake to mark *a few articles in hundreds of thousands* made and sold . . .") (emphasis added);[4] *Maxwell.*, 880 F. Supp. at 1336 ("An implied de minimis exception protects the patentee whose compliance with the marking statute is *nearly perfect*.") (emphasis added). In these decisions, the unmarked products were a *de minimis* portion of the released goods in comparison to the vast majority of goods – which were, indeed, marked and, accordingly, provided the required notice to the public. This is by contrast to the instant situation in which the sole product Plaintiff released to the

---

[4]*See generally Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1535 (Fed. Cir. 1993) (discussing *Hazeltine* as arising under predecessor statute to current § 287(a)).

public was unmarked. Here, the *entirety* of the "articles made or sold" by Plaintiff were unmarked.

Plaintiff argues that its Philadelphia Zoo installation was only one article, and in comparison to the millions of infringing products released on the market its one article is de minimis. (D.I. 82 at 9) While this may be true, it is immaterial. The pertinent comparison is between the number of marked and unmarked embodiments made, offered, sold, or imported by the patentee, *not* a comparison between the patentee's and the accused infringers' embodiments.

Constructive notice "requires the record to show that 'the patentee consistently marks substantially all of its patented products.'" *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1378 (Fed. Cir. 2010) (quoting *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005)), *aff'd sub nom. Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011). Plaintiff is correct that only one embodiment was released, but this one embodiment was unmarked. Based on this undisputed fact, it follows that Plaintiff did not mark "substantially all" of the patented articles it produced and sold. Hence, no reasonable juror could conclude that Plaintiff provided Defendants with constructive notice of the '318 patent.

### 3. Actual Notice

Taking the record evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff also failed to give Defendants actual notice of infringement. "Actual notice" requires the "affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted*, 24 F.3d at 187.

As Defendants note, Plaintiff predicates its actual notice argument on a single document: a September 2007 form letter, allegedly sent to LG and Samsung. (D.I. 70 at 3; Disc. Tr. at 8)

14

Plaintiff has not produced the actual letter, but instead has produced an example of a "form letter" that Plaintiff contends was sent to Defendants. The letter states, in pertinent part:

> I am writing this letter on behalf of the inventor and owner of the attached U.S. Patent 6,920,916 [sic] to notify your company that the above-noted reissue application has been filed requesting that additional claims be added to this patent . . . The inventor does not seek claims to which he is not entitled and desires that any prior art or other information which may be relevant to the patentability of his invention be brought to the attention of the Patent Office so that it can be considered during the reissue proceedings. *Your company is being notified because it may have knowledge of pertinent prior art.*

(Maisel Decl., Ex. F) (emphasis added) As the text of the letter makes clear, Plaintiff notified Defendants only of the opportunity to submit prior art for use in Plaintiff's reissue proceedings. The letter does not mention infringement, or even a specific product. The letter cannot be read to constitute the required affirmative communication of a "specific charge of infringement" by a "specific accused product." At bottom, the letter failed to provide actual notice.

Plaintiff suggests that the letter provided notice of the patent, thereafter allowing Defendants to deduce that they were infringing. (*See* Disc. Tr. at 8) The Court is not persuaded that this satisfies the notice requirement. As the Federal Circuit has stated, "[i]t is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted*, 24 F.3d at 187; *see also Logitech*, 254 F.3d at 1346 ("[W]hether or not the alleged infringer subjectively believed that the patentee's letter was a charge of infringement has no bearing on the adequacy of notice.").[5]

_____

[5]*See also SRI*, 127 F.3d at 1470 ("The requirement of actual notice under § 287(a) is designed to assure that the recipient knew of the adverse patent during the period in which

15

Consequently, no reasonable juror could conclude that Plaintiff provided Defendants actual notice. In combination with the Court's determinations that the notice obligation was not excused by the pendency of the reissue proceedings, and that Plaintiff also failed to provide Defendants constructive notice, the result is that Defendants' motion for summary judgment to limit damages based on Plaintiff's failure to mark must be granted. Plaintiff may only recover, at most, damages accruing after the date the complaint was filed in the respective actions against Samsung and LG.

## IV.    CONCLUSION

For the reasons given above, the Court will deny Defendants' Motion for Summary Judgment of Invalidity under 35 U.S.C. § 112(a) (D.I. 78; C.A. No. 12-964 D.I. 70) and grant Defendants' Motion for Partial Summary Judgment Limiting Damages in the Case to Post-Complaint Activities (D.I. 69; C.A. No. 12-964 D.I. 59). The Court also grants Defendants' Motion to Strike (D.I. 91; C.A. No. 12-964 D.I. 84) but without prejudice to Plaintiff's ability to attempt to rely on Mr. Bear at a later stage in the proceedings. An appropriate Order follows.

---

liability accrues, when constructive notice by marking is absent.").

16